UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SON YE GNOTH, by and through her Attorney-in-fact, James Gnoth, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:22-CV-4-DCP |
| VICTORIAN SQUARE, LLC d/b/a VICTORIAN SQUARE ASSISTED LIVING, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 21].

Now before the Court is Defendants' Motion to Dismiss and/or Compel Arbitration and Stay the Proceedings [Doc. 15]. Plaintiff responded in opposition to the motion [Doc. 18], and Defendant filed a reply [Doc. 19]. On November 21, 2022, the parties appeared before the Court via telephone for a status conference on the motion and the related filings and to determine whether the motion should be converted into a motion for summary judgment.[1] During the telephonic status conference, the parties presented no objections to the Court converting Defendants' motion

---

[1] By way of background, on November 2, 2022, the Court entered an Order [Doc. 24], noting that Defendants' motion did not specify the provision that it was invoking pursuant to the Federal Arbitration Act ("FAA") [Doc. 24 at 1]. In addition, the Court further noted that in response to Defendants' motion, Plaintiff filed a declaration [Doc. 18-4] that is not part of the pleadings [Doc. 24 p. 2]. Thus, the Court set a status conference to determine whether it was appropriate to convert Defendants' motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 836–39 (6th Cir. 2021) (analyzing the provisions of the FAA and the proper vehicle to challenge arbitration agreements).

1

to dismiss filed pursuant to Rule 12(b)(6) into a motion for summary judgment under Rule 56. Given this conversion, the Court permitted additional filings, which the parties submitted [Docs. 27, 28, and 29]. The motion is therefore ripe for adjudication. For the reasons more fully explained below, the Court **GRANTS** Defendants' motion [**Doc. 15**] and will **ORDER** the parties to arbitration.

I.  BACKGROUND

On April 10, 2017, Plaintiff was admitted to Victorian Square Assisted Living ("Victorian Square") [Doc. 18-4 ¶ 1]. Prior to residing at Victorian Square, Plaintiff's representative, Rebekah Gnoth,[2] signed several documents [Doc. 18-1]. Rebekah Gnoth "recall[s] the facility representative giving [her] a stack of papers conveying that they all needed to be signed in order for [Plaintiff] to be admitted to the facility" [Doc. 18-4 ¶ 2]. She contends that "[d]uring the admission process, there was not a lot of time to thoughtfully consider each and every document or consult an attorney, especially because [Plaintiff] needed to be admitted right away" [*Id*. ¶ 3]. Included in the paperwork was an Agreement to Arbitrate Disputes ("Arbitration Agreement") [Doc. 16-1]. The Arbitration Agreement states, "*Signing this agreement is not a perquisite to the furnishing of services at Victorian Square.*" [*Id*. at 1]. It also includes the following paragraph:

> It is understood that any legal claim or civil action arising out of or relating to care or services provided to you at Victorian Square (e.g., claims for refund, breach of contract, intentional tort, wrongful death, elder abuse, unfair business practices) or relating to the validity or enforceability of the Residence and Care Agreement for Victorian Square, will be determined by submission to arbitration as provided in the Tennessee law. This includes claims or actions regarding whether the care or services you received, or lack of care or services, was unnecessary or unauthorized or was improperly, negligently, or incompetently rendered. Both parties to this contract, by entering into it, are giving up their constitutional right

---

2   Defendants refer to Rebekah Gnoth as "Rebekah K. Ambrose" [Doc. 16]. Plaintiff filed the Declaration of Rebekah Gnoth [Doc. 18-4]. Thus, the Court will refer to her as "Rebekah Gnoth."

2

to have any such dispute decided in a court of law before a jury, and
instead are accepting the use of arbitration.

[*Id.*]. Rebekah Gnoth does "not specifically recall signing an arbitration agreement or anyone explaining the meaning or effect of the arbitration agreement at the time [she] apparently signed it" [Doc. 18-4 ¶ 4]. She states that she did "not fully understand the Arbitration Agreement's meaning or effect until an attorney with The Higgins Firm explained it to [her] after the filing of this case" [*Id.* ¶ 5].

On January 4, 2022, Plaintiff filed a Complaint against Defendants alleging negligence pursuant to the Tennessee Medical Malpractice Act and gross negligence, willful, wanton, reckless, malicious, and/or intentional misconduct [Doc. 1]. Defendants have now moved for arbitration given the agreement above, and Plaintiff has opposed that motion.

## II. STANDARD OF REVIEW

In their original brief, Defendants claim that the Federal Arbitration Act ("FAA") "governs this arbitration agreement." [Doc. 16 p. 8]. Plaintiff does not appear to dispute this position [Doc. 18 p. 2] (explaining that the FAA "places arbitration agreements on an equal footing with other contracts" (quoting *Rent-A-Ctr., W., Inc., v. Jackson*, 561, U.S. 63, 67 (2010) (citation omitted)))]. *See also* [Doc. 1 ¶ 7] (demanding a jury trial pursuant to 9 U.S.C. § 4)].[3] In its supplemental brief,

---

[3] The Court notes that in Defendants' original brief, they argue that the Tennessee Uniform Arbitration Act ("TUAA") does not apply and that the "FAA is the only law that applies" [Doc. 16 p. 9]. In support of this assertion, Defendants point to other courts that "have held contracts involving nursing facilities . . . [are] covered under the FAA" [Doc. 16 p. 7 (citation omitted)]. But the cases Defendants rely on are distinguishable from the facts of this case. *See Canyon Sudar Partners, LLC v. Cole ex rel. Haynie*, No. CIV.A. 3:10-1001, 2011 WL 1233320, at *10 (S.D.W. Va. Mar. 29, 2011) (finding that the plaintiffs established that they met the interstate commerce requirement in the FAA because they submitted evidence showing that they engaged in interstate commerce); *Rainbow Health Care Ctr., Inc. v. Crutcher*, No. 07-CV-194-JHP, 2008 WL 268321, at *5 (N.D. Okla. Jan. 29, 2008) (finding that the plaintiffs established that they met the interstate commerce requirement in the FAA because they submitted a statement of material facts outlining the economic activity and the defendant did not respond to their statement); *Toledo v. Kaiser Permanente Med. Grp.*, 987 F. Supp. 1174, 1180 (N.D. Cal. 1997) (explaining that the

3

Defendant relies on § 4 of the FAA to compel arbitration [Doc. 27 p. 2]. In response, Plaintiff argues that § 4 of the FAA is not applicable, arguing that it is reserved for plaintiffs who seek arbitration. Plaintiff argues that § 3 of the FAA is the appropriate remedy for a defendant seeking to enforce a valid arbitration agreement, but "she desires neither a stay nor dismissal and opposes arbitration altogether" [Doc. 28 p. 2].

The Supreme Court noted that it is "inconceivable" that the Act would change the rules "depending upon which party to the arbitration agreement first invokes the assistance of a federal court." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *see also Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 837 (6th Cir. 2021) (treating the defendant's motion "as one partially under § 4 because it sought to compel [the plaintiff] to arbitrate" even though "it also sought to dismiss [the plaintiff's] complaint and did not cite § 4) (citation omitted). Thus, the Court will apply § 4 of the FAA, which provides in relevant part as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

---

"[a]greement evidences a number of links to interstate commerce sufficient to invoke the application of the FAA."). Defendants have not presented the Court with similar evidence.

Nevertheless, Plaintiff does not respond to Defendants' argument that the TUAA does not apply in this case and instead also cites to the FAA in her brief. *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 809 (Tenn. Ct. App. 2015) (finding that the defendant waived its argument regarding the applicability of the FAA). To the extent that the TUAA does apply, however, the Court would enforce the arbitration agreement for the reasons explained below. *See* § 14:7. Tennessee Uniform Arbitration Act, 27 Tenn. Prac. Const. Law § 14:7 ("But regardless of which Act applies, both the FAA and the UAA require an enforceable arbitration provision before a party may be compelled to arbitrate the dispute.").

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

The Sixth Circuit has noted that "[t]he section allows the court to consider only narrow issues: those 'relating to the making and performance of the agreement to arbitrate.'" *Boykin*, 3 F.4th at 837 (quoting *Prima Paint Corp.*, 388 U.S. at 404). "If, after hearing from the parties, the court is 'satisfied that the making of the agreement' (or its breach) 'is not in issue,' the court 'shall make an order' compelling arbitration." *Id.* (citing 9 U.S.C. § 4)).

The Federal Rules of Civil Procedure govern the proceedings relating to arbitration to the extent they are applicable and comport with the FAA. *Id.* (citing Fed. R. Civ. P. 81(a)(6)(B)); *see also Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 495 F. Supp. 3d 601, 607 (W.D. Tenn. 2020) ("The Sixth Circuit treats motions to compel arbitration like motions for summary judgment."). And under § 4, "Rule 56's standards govern whether a court should hold a trial under § 4 when a party alleges that no contract exists." *Boykin*, 3 F.4th at 838 (citation omitted).

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002) (citation omitted).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

The Court has reviewed the parties' positions, and for the reasons explained below, the Court **GRANTS** Defendants' motion [**Doc. 15**].

As mentioned above, in considering a motion filed pursuant to § 4 of the FAA, the Court considers only "narrow issues: those relating to the making and performance of the agreement to

6

Case 3:22-cv-00004-DCP   Document 30   Filed 03/17/23   Page 6 of 13   PageID #: 395

arbitrate." *Boykin*, 3 F4th at 837 (quoting *Prima Paint Corp.*, 388 U.S. at 404).[4] If the making of the agreement is not at issue, Court must order arbitration. 9 U.S.C. § 4. If the making of the arbitration agreement is at issue, then the Court must proceed "summarily to the trial." 9 U.S.C. § 4. "[T]he party seeking to compel arbitration 'must initially carry its burden to produce evidence that would allow a reasonable jury to find an [arbitration] contract exists.'" *Boyd Nursing & Rehab., LLC v. Wells*, No. CV 0: 22-011-DCR, 2022 WL 3971034, at *8 (E.D. Ky. Aug. 30, 2022) (quoting *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021)). The party opposing arbitration "must then present specific facts that would allow a reasonable jury to conclude that no [arbitration] contract was formed." *Id.* (quoting *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881). "Whether a valid agreement to arbitrate exists is determined by state law." *Elliot v. NTAN, LLC*, No. 3:18-CV-00638, 2018 WL 6181351, at *3 (M.D. Tenn. Nov. 27, 2018) (citing 9 U.S.C. § 2).

In the instant matter, Defendants have offered a signed arbitration agreement; therefore, they have met their burden demonstrating that an arbitration contract exists [Doc. 16-1]. *See Boyd Nursing & Rehab., LLC*, 2022 WL 3971034, at *8 (stating that to meet this burden the party may offer the "signed [arbitration] agreement") (quoting *Structures USA, LLC v. CHM Indus., Inc.*, No. 3:21-cv-458-BJB-LLK, 2022 WL 882166, at *3 (W.D. Ky. Mar. 24, 2022) (citation omitted)). The burden now shifts to Plaintiff to show specific facts that would allow a reasonable jury to conclude that no arbitration agreement was formed. *Id*. Here, Rebekah Gnoth does not recall

---

[4] *See also* Tenn. Code Ann. § 29-5-303(a) ("On application of a party showing an agreement described in § 29-5-302, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.").

signing the Arbitration Agreement. But as explained by the Sixth Circuit, "[a] party thus cannot expect to obtain a trial under § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration." *Boykin*, 3 F.4th at 840.

Plaintiff, however, makes two additional arguments to establish that the arbitration agreement was not formed: unconscionability and the waiver of a jury trial was not knowingly made. *See Boyd Nursing & Rehab.*, 2022 WL 3971034, at *8 (analyzing the argument that the arbitration agreement was unconscionable in determining whether the agreement was "in issue"); *Scott v. Inter-Con Sec. Sys., Inc.*, No. 19-CV-12655, 2021 WL 3401218, at *2 (E.D. Mich. Aug. 4, 2021) (ordering the parties to arbitrate under § 4 of the FAA but analyzing plaintiff's argument that the arbitration agreement is not binding because he was under duress). With respect to the former, Plaintiff argues that the Arbitration Agreement: (1) needed to be signed in an expedited manner, (2) it was part of a larger packet of admission paperwork, (3) it was not sufficiently explained, (4) it "glosses over the fact that agreeing to arbitrate means giving up the constitutional right" to proceed before a judge or jury, (5) there is no revocation clause, and (6) the arbitration service is predetermined and silent on how the arbitrator is chosen [Doc. 18 pp. 5–6]. In addition, Plaintiff states that "[a]rbitration would be prohibitively expensive to Ms. Gnoth and others similarly situated, and therefore[,] the Arbitration Agreement cannot be enforced against her" [*Id*. at 8]. In support of this argument, she states that she engaged her counsel on a contingency fee basis [Doc. 18-2]. She further points out that the Arbitration Agreement provides "[e]ach party shall bear its proportionate share of the costs of any arbitration." [Doc. 18 p. 8 (citing Doc. 16-1 p. 2]. She attaches a fee schedule of the American Arbitration Association [Doc. 18-3].

A contract is unconscionable when "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable

8

person would make them on one hand, and no honest and fair person would accept them on the other." *Haun v. King,* 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984). Determining whether a contract is unconscionable has "two components: (1) procedural unconscionability, which is an absence of the meaningful choice on the part of one of the parties and (2) substantive unconscionability, which refers to contract terms which are unreasonably favorable to the other party." *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007).

The Court has considered Plaintiff's arguments but finds that the Arbitration Agreement is not unconscionable. Plaintiff states that the Arbitration Agreement was part of a larger packet of paperwork and not sufficiently explained. The Arbitration Agreement, however, is a separate document, and it is written in relatively straightforward language. It contains the heading **AGREEMENT TO ARBITRATE DISPUTES** with the following sentencing: "*Signing this agreement is not a prerequisite to the furnishing of services at Victorian Square*" [Doc. 16-1]. *See Boyd Nursing & Rehab., LLC*, 2022 WL 3971034, at *9 ("This Court has previously found that nursing home arbitration agreements with similar characteristics [i.e., arbitration agreement labeled in capitalized bold letters, explaining that the resident or representative does not have to sign as a condition of admission or requirement to receive services, and that resident has a right to seek legal counsel] fall short of the high bar for procedural unconscionability despite their "boilerplate" language."); *see also Reagan v. Kindred Healthcare Operating, Inc.*, No. M200602191COAR3CV, 2007 WL 4523092, at *15 (Tenn. Ct. App. Dec. 20, 2007) (enforcing an arbitration agreement after finding that the contract was not one of adhesion, that the arbitration agreement was in a stand-alone contract, that the contract explained that the arbitration resulted in a waiver of jury and appeal rights, and the contract did not change the duties or liabilities of the parties). *Cf. Raiteri ex rel Cox v. NHC Healthcare/Knoxville, Inc.*, No. E2003–00068–COA–R9–

9

CV, 2003 WL 23094413, at *8 (Tenn. Ct. App. Dec. 30, 2003) (concluding that an arbitration provision was unenforceable where the arbitration provision was contained in an eleven-page services contract, the underlying contract was one of adhesion, "essential terms in the mediation and arbitration provisions are 'buried' and not clearly 'laid out,'" and the arbitration provision was not conspicuous).

Plaintiff further asserts that the "arbitration service is pre-determined by the Agreement, and the Agreement is silent on how the arbitrator or arbitrators are chosen" [Doc. 18 p. 5]. But the provision in the Arbitration Agreement that Plaintiff cites states that a demand for arbitration must include "any special qualifications or neutral arbitrator desired" [Doc. 16-1 p. 2]. Article V then references how the arbitration will be conducted and provides the website for the applicable rules. The Arbitration Agreement here is clear that the Commercial Arbitration rules apply [*Id*.]. Thus, the Court declines to find the Arbitration Agreement unconscionable on these grounds. *See also Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 822–23 (Tenn. Ct. App. 2015) ("[W]e must conclude that the failure to include these terms [i.e., procedure for seeking arbitration, how an arbitrator will be appointed, the binding effect of arbitration, or any of the procedure to be utilized during the arbitration proceedings] is not *per se* fatal to the enforceability of the arbitration clause.").

Plaintiff also contends that the paperwork needed to be signed in an expedited manner. And while the Court has considered the circumstances of Plaintiff's admission to the facility, there is nothing in the record to suggest that Rebekah Gnoth was not provided an opportunity to question the terms of the agreement. *Id*. at 822 (stating that some factors weigh in favor of enforcing the arbitration agreement, including there was "nothing in the record suggest[ing] that [the plaintiff] was not provided with an opportunity to question the terms of the agreement"). And while the

Arbitration Agreement did not provide for a method to revoke the agreement, *see id*. at 824 (considering revocability as a factor), the Court notes that this was not a contract of adhesion [Doc. 16-1].

The Court has also considered Plaintiff's argument regarding the costs of arbitration as "prohibitively expensive for Ms. Gnoth and other residents and their families" [Doc. 18 p. 9]. Both federal and Tennessee courts "have recognized that, in some types of cases, an arbitration provision may not be enforceable if the costs of arbitration are prohibitively expensive and thereby prevent vindication of a party's rights." *Hill v. NHC HealthCare/Nashville, LLC*, No. M200501818COAR3CV, 2008 WL 1901198, at *13 (Tenn. Ct. App. Apr. 30, 2008) (citing cases). In support of her argument, Plaintiff offers the administrative fee schedule pursuant to the Commercial Arbitration Rules [Doc. 18-3]. But the Court finds Plaintiff has not met her burden of proof in establishing that such fees render the Arbitration Agreement unconscionable. Plaintiff does not explain what fee schedule could potentially apply in this case.[5] In addition, the Arbitration Agreement states, "Each party shall bear its proportionate share of the costs of any arbitration" [Doc. 16-1 p. 2]. Further, other than stating that her counsel agreed to take this case on a contingency fee, Plaintiff has not submitted any proof that she cannot afford arbitration costs. *Hill*, 2008 WL 1901198, at *15 ("We do not disagree that the party seeking to invalidate an arbitration agreement on the ground that the costs are too great has the burden of proving such costs."); *see also Trigg v. Little Six Corp.,* 457 S.W.3d 906, 916 (Tenn. Ct. App. 2014) (finding that plaintiff had not met his burden in showing that the costs of arbitration before the AAA was prohibitive explaining that he provided little information regarding his assets). The Court again

---

5  Although Plaintiff does not provide any detail regarding her potential filing fee, the Court notes that in her Complaint, she does allege that the matter in controversy exceeds the sum or value of $75,000 [Doc. 1 ¶ 4].

notes that this was not a contract of adhesion, and Plaintiff was not required to agree to arbitrate in order to be admitted to the facility. *Cf. Hill*, 2008 WL 1901198, at *16 (noting that the arbitration agreement at issue was a contract of adhesion).

Finally, Plaintiff argues that the waiver of a jury trial was not knowingly made [Doc. 18 p. 10] (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003)). Plaintiff states that the Court must consider the factors articulated in *Morrison*, including "(1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the [plaintiff] had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances" [Id. (quoting Morrison, 317 F.3d at 668)]. Plaintiff has presented no evidence of the first factor. While the Court has considered that Plaintiff needed to be admitted quickly and did not have time to consult with an attorney under the circumstances, the Court finds this is outweighed by the straightforward language of the Arbitration Agreement. The Arbitration Agreement plainly states, "[B]oth parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration" [Doc. 16-1]. In light of this straightforward language and given this was not a contract of adhesion, the Court finds Plaintiff's argument not well taken. *See also Boyd Nursing & Rehab., LLC*, 2022 WL 3971034, at *10 (finding that the "complaint about giving up the constitutional right to a jury trial [in] an attempt to establish substantive unconscionability, . . . is nothing more than a general grievance about the nature of arbitration and arbitration agreements. Such arguments carry no weight.").

The Court has considered the totality of the circumstances in this case and finds that the arbitration provision should be enforced and that all claims herein must be arbitrated.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss and/or Compel Arbitration and Stay the Proceedings [**Doc. 15**]. The Court **ORDERS** the parties to proceed to arbitration in accordance with their argument. The Court **DISMISSES** this action **WITHOUT PREJUDICE**. *Shelton v. Pappas Restaurants, Inc.*, No. 1:21-CV-470, 2022 WL 159548, at *7 (S.D. Ohio Jan. 18, 2022) (Thus, in the interest of consistency within this District and Circuit, dismissal without prejudice, rather than a stay of proceedings pending the conclusion of arbitration, is appropriate."), *report and recommendation adopted*, No. 1:21-CV-470, 2022 WL 615031 (S.D. Ohio Mar. 2, 2022); *Witemyre v. GE Flight Efficiency Servs., Inc.*, No. 1:21-CV-314, 2021 WL 3079884, at *7 (S.D. Ohio July 21, 2021) (ordering the parties to arbitration and dismissing the action without prejudice).

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge